UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| COURTNEY RICHMOND,<br><br>Plaintiff,<br><br>vs.<br><br>NOLAN WIESE; KRAFT FOODS GROUP, INC.; US FOODS, INC.; JUDGE ROBERTO A. LANGE, in his individual capacity; JUDGE POWER, in his individual capacity; WOODS AND FULLER, P.C.; MINNEHAHA COUNTY CLERK OF COURTS; CODY JANSEN, in his individual capacity; TROOPER JORDAN ANDERSON, in his individual capacity; KEVIN KROHN, in his individual capacity; DANIEL HAGER, in his individual capacity; MATT THELEN, in his individual capacity; MARK HODGES, in his individual capacity; FBI AGENTS, John Does 1-2; JOHN DOES 3-50; MAGISTRATE VERONICA L. DUFFY,<br><br>Defendants. | 4:25-CV-04217-ECS<br><br><br>OPINION AND ORDER GRANTING KRAFT'S MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION TO QUASH |

Plaintiff, Courtney Richmond, filed a pro se lawsuit alleging several claims, including under the Racketeer Influenced and Corrupt Organizations Act, related to conspiracy to steal and profit from his intellectual property while preventing his obtaining of justice. Docs. 1, 4. In Richmond's Amended Complaint, he sues Kraft Heinz Foods Company, LLC[1] for alleged involvement in the conspiracy. Doc. 4. Kraft moves to dismiss Richmond's claims against it under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6). Docs. 42, 43.

---

[1] Richmond named Kraft Foods Group, Inc. as a defendant, but Kraft Foods Group, Inc. is now Kraft Heinz Foods Company, LLC. Doc. 43 at 1 n.1.

## I.    Factual Background as Alleged by Richmond as to Claims Against Kraft

Richmond's now-deceased mother created a barbecue sauce recipe, which became his intellectual property. Doc. 4 at 10, 15. In 2016, Richmond and Nolan Wiese signed a non-disclosure agreement (NDA), which was drafted by attorneys at Woods Fuller. Id. at 12, 15. Pursuant to the protection of the NDA, Richmond provided Nolan Wiese with the sauce recipe. Id. at 15–16. Wiese allegedly provided the recipe to US Foods, Inc. in violation of the NDA. Id. at 9, 15–16. "US Foods then engaged Kraft Foods to manufacture products using the stolen recipe." Id. at 9–10, 15; see also id. at 16, 22. US Foods distributed the barbecue sauce in restaurants across the nation, including a restaurant in Iowa. Id. at 16. According to Richmond, "US Foods and Kraft Foods have generated hundreds of millions or billions of dollars in revenue from Plaintiff's stolen recipe through interstate commerce." Id. Richmond alleges that Kraft was part of a conspiracy "to steal Plaintiff's intellectual property and retaliate against him for seeking justice" and that it "knowingly participated in the conspiracy by manufacturing products derived from stolen intellectual property." Id. at 5, 11; see also id. at 9.

Richmond sues Kraft specifically under 18 U.S.C. §§ 1831–1839, 17 U.S.C. § 501, 35 U.S.C. § 271, as well as under state law for larceny/theft, unjust enrichment, and fraud and deceit. Id. at 25–28. Richmond also alleges claims against Defendants generally under 18 U.S.C. § 1964(c), 18 U.S.C. § 241, 42 U.S.C. § 1985, 18 U.S.C. § 1343, and 18 U.S.C. § 1341, as well as a state law claim for conversion. Id. at 23–27.

## II.    Procedural Background

On December 31, 2025, Kraft moved to dismiss Richmond's claims against it. Docs. 42, 43. Richmond responded to Kraft's motion to dismiss on January 7, 2026, Doc. 49, and on January 9, 2026, Richmond filed an amended response, Doc. 54. On January 26, 2026, Kraft

2

filed its reply brief.  Doc. 74.  Although "movant[s] may file a reply brief within 14 calendar days after service of the responsive brief," D.S.D. Civ. LR 7.1(B), this Court will consider Kraft's late brief because Richmond did not object to its filing and did not suffer "any material prejudice resulting from the late filing." Moore v. City of Desloge, 647 F.3d 841, 849 (8th Cir. 2011).

On February 2, 2026, Richmond filed an additional responsive brief to Kraft's motion to dismiss.  Doc. 86.  Kraft moves for an order striking Richmond's improper surreply brief.  Docs. 88, 89.  Richmond did not respond to Kraft's motion to strike.

As Kraft notes, neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize filing a surreply, but a party may seek leave of court to do so.  Doc. 89 at 2 (citing Buergofol GmbH v. Omega Liner Co., Inc., No. 4:22-CV-04112-KES, 2025 WL 964541, at *2 (D.S.D. Mar. 28, 2025)).  Litigants, including pro se litigants, "must generally seek leave for permission to file a sur-reply." Buergofol GmbH, 2025 WL 964541, at *2 (citing Counts v. Wasko, No. 4:23-CV-04103-KES, 2024 WL 4068651, at *3 (D.S.D. Sept. 5, 2024); Soliman v. Johanns, 412 F.3d 920, 922 (8th Cir. 2005)).  "A party may seek leave for permission to file a surreply when the moving party's reply brief contains new information or arguments for which an opportunity to respond is needed." Counts, 2024 WL 4068651, at *3 (citation omitted).  Richmond has not sought leave of court to file a surreply.  Further, Kraft's reply brief does not include new information.  Thus, this Court grants Kraft's motion to strike, Doc. 88, and Wiese's surreply, Doc. 86, is stricken.

3

### III.    Kraft's Motion to Dismiss

Kraft moves to dismiss for improper service of process pursuant to Rule 12(b)(5), lack of personal jurisdiction pursuant to Rule 12(b)(2), and failure to state a claim pursuant to Rule 12(b)(6).  Doc. 42.

### A.    Patently Meritless

As this Court recognized when ruling on Wiese's motion to dismiss, several of Richmond's claims are patently meritless.  "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  Steel Co. v Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (quoting Oneida Indian Nation of N Y. v. County of Oneida, 414 U.S. 661, 666 (1974)).

Richmond alleges claims against Kraft under 18 U.S.C. §§ 241, 1341, and 1343, which are federal criminal statutes that do not provide a private cause of action.  United States v. Wadena, 152 F.3d 831, 846 (8th Cir. 1998); Thornsberry v. Barden, 854 F. App'x 105, 106 (8th Cir. 2021) (per curiam) (citing Wadena, 152 F.3d at 846); Wisdom v. First Midwest Bank, 167 F.3d 402, 407–09 (8th Cir. 1999).  See also Doc. 43 at 16–17 (arguing that § 241 claim fails as a matter of law because it does not provide a private right of action).  Accordingly, Richmond's §§ 241, 1341, and 1343 claims are patently meritless.

Richmond's copyright infringement claim under 17 U.S.C. § 501 is patently meritless because Richmond only identified that he had copyright protection over the label to his barbecue sauce, and Richmond made no allegation that Kraft engaged in copyright infringement of the sauce label.  Doc. 4 at 15, 26.  Kraft argues that Richmond's recipe was not copyrightable and "[t]o the extent Plaintiff intends to base his claim on the copyright label, the complaint fails to

4

allege any facts showing infringement." Doc. 43 at 17–18. Accordingly, this Court dismisses Richmond's copyright claim under § 501 as patently meritless.

Richmond alleges a claim for patent infringement under 35 U.S.C. § 271. Doc. 4 at 16, 26. Section 271(a) states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." But Richmond only alleges that he had a provisional patent. Doc. 4 at 16, 26. A provisional patent is merely an application for patent that allows filing without a formal patent claim; such applications serve as placeholders and are not examined for patentability. BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C., 166 F.4th 197, 217 n.24 (1st Cir. 2026); United States v. Camick, 796 F.3d 1206, 1218 (10th Cir. 2015); Martin v. United States, 99 Fed. Cl. 627, 632–33 (Fed. Cl. 2011). Kraft argues "not only did Plaintiff fail to allege which claim elements that Kraft Heinz has infringed, but, even more fundamentally, Plaintiff failed to allege the existence of a valid patent." Doc. 43 at 20; see also id. at 19. Accordingly, Richmond's § 271 claim against Kraft is patently meritless.

Richmond also alleges a claim under 42 U.S.C. § 1985 without specifying what section he is referring to. See generally Doc. 4. Kraft moves to dismiss because Richmond failed to plead with particularity facts showing an agreement, failed to show Kraft entered an agreement to deprive him of equal protection, and failed to allege discriminatory animus. Doc. 43 at 20–21. A claim under § 1985(1) is patently frivolous because he has not alleged a conspiracy to prevent him from holding office. A claim under the first phrase of § 1985(2) is also patently frivolous. "The first phrase of § 1985(2) prohibits conspiracy to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to

5

any matter pending therein." Gunn v. Stearns, No. 4:25-CV-04034-ECS, 2025 WL 2416132, at *9 (D.S.D. Aug. 21, 2025) (citation modified). Although Richmond makes allegations to witness tampering, Doc. 4 at 22–23, there is no indication that Richmond was a witness or had any criminal charges pending against him at the time of the alleged misappropriation of a trade secret, and there is no indication that Kraft took any action against Richmond otherwise or made any agreement or had a meeting of the minds to join a conspiracy to prevent Richmond from attending or testifying. See generally id. To the extent that Richmond's Amended Complaint could be read to allege a claim under the second phrase of § 1985(2) or under § 1985(3), such claim would be patently meritless. To assert a claim under the second phrase of § 1985(2) or under § 1985(3) "the plaintiff must allege that the conspiracy was fueled by 'class-based, invidiously discriminatory animus,'" Gunn, 2025 WL 2416132, at *10 (quoting Andrews v. Fowler, 98 F.3d 1069, 1079 (8th Cir. 1996)), and Richmond has made no such allegation of discrimination. Thus, Richmond's § 1985 claim is patently meritless.

Richmond alleges a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO). Doc. 4 at 23. "To have standing to make a RICO claim, a party must have 1) sustained an injury to business or property 2) that was caused by a RICO violation. Then a RICO plaintiff must prove the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Asa-Brandt, Inc. v. ADM Inv. Servs., 344 F.3d 738, 752 (8th Cir. 2003) (citation modified); see also Crest Const. II, Inc. v. Doe, 660 F.3d 346, 353–58 (8th Cir. 2011) (recognizing that plaintiff must show conduct of an enterprise through a pattern of racketeering activity at the motion to dismiss stage). "Three elements must be proven to show that a RICO enterprise existed: (1) a common purpose that animates the individuals associated with it; (2) an ongoing organization with members who function as a continuing unit; and (3) an ascertainable

6

structure distinct from the conduct of a pattern of racketeering." Crest Constr. II, Inc., 660 F.3d at 354 (quoting United States v. Lee, 374 F.3d 637, 647 (8th Cir. 2004)). It is not expressly clear if Richmond is only alleging a RICO violation claim or a RICO conspiracy claim. See generally Doc. 4. To establish a RICO conspiracy claim, the plaintiff must allege (1) the existence of an enterprise, (2) the enterprise affected interstate or foreign commerce, (3) the defendant associated with the enterprise, and (4) the defendant objectively manifested an agreement to participate in the affairs of the enterprise. Aguilar v. PNC Bank, 853 F.3d 390, 402 (8th Cir. 2017) (citing United States v. Darden, 70 F.3d 1507, 1518 (8th Cir. 1995)). Richmond alleges that "[t]he racketeering activity includes theft of trade secrets, wire fraud, mail fraud, obstruction of justice, and witness tampering." Doc. 4 at 23.

The definition of "racketeering activity" in the statute includes, as relevant to Richmond's claims, any act which is indictable under 18 U.S.C. §§ 1831 and 1832 relating to economic espionage and theft of trade secrets, 18 U.S.C. § 1343 relating to wire fraud, 18 U.S.C. § 1341 relating to mail fraud, 18 U.S.C. § 1503 relating to obstruction of justice, and 18 U.S.C. § 1512 relating to tampering with a witness. 18 U.S.C. § 1961(1). The Court has reviewed each statute, and §§ 1831, 1343, 1341, 1503, and 1512 do not appear to have any relevance whatsoever to Richmond's claims against Kraft. See also H & Q Props., Inc. v. Doll, 793 F.3d 852, 856 (8th Cir. 2015) (discussing requirements to plead wire and mail fraud as predicate acts (citing Wisdom, 167 F.3d at 406)).

Section 1832 criminalizes theft of a trade secret. Kraft argues, "[a]lthough misappropriation of a trade secret may qualify as a predicate act in limited circumstances, a plaintiff must allege facts showing the defendant knew or had reason to know the trade secret was obtained through improper means. Here, the complaint contains no such allegations." Doc.

7

43 at 15–16 (citation modified). Richmond's Amended Complaint makes a conclusory allegation that "Defendants Nolan Weise [sic], Kraft Foods, and US Foods knowingly stole, misappropriated, and used Plaintiff's trade secret without authorization." Doc. 4 at 25. Kraft argues that even if it did produce a barbecue sauce "using a recipe allegedly provided by Nolan Wiese," that constitutes "ordinary manufacturing and sales activity," not racketeering activity. Doc. 43 at 15 (citing Sinclair v. Hawke, 314 F.3d 934, 940 (8th Cir. 2003)). Kraft also argues that Richmond has failed to allege a pattern of racketeering activity and has only stated conclusory allegations of an enterprise. Id. at 16. Further, Richmond has not made clear allegations of how defendants are associated with each other or have a common purpose. See Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 355 (8th Cir. 2011).

Richmond's allegations of an enterprise or conspiracy—whether arising under RICO or § 1985—are absurd. Richmond claims that this conspiracy involving state and federal judges started with Wiese stealing his barbecue sauce. Doc. 4 at 9, 10, 15, 16. For this Court to find Richmond's claims plausible, it would have to assume implausible facts: that in 2016, Woods Fuller drafted the NDA knowing that Wiese would steal the recipe, and in preparation for future litigation had an attorney from the firm become a state court judge appointed by the governor. At the point of litigation, Woods Fuller refused to represent Richmond in enforcing the NDA against Wiese, Kraft, and US Foods because Woods Fuller gained an interest on behalf of those defendants or itself, and a conspiracy was formed between Wiese, Kraft, US Foods, the law firm, federal and state court judges, the FBI, federal prosecutors, and state police officers—all to steal Richmond's mother's barbecue sauce recipe and to criminally prosecute Richmond to cover up the alleged theft. See generally id. Richmond's Amended Complaint asks this Court to make

8

illogical leaps to arrive at that conclusion. His allegations of conspiracy or common enterprise are too implausible and devoid of merit to confer jurisdiction over these claims.[2]

Richmond also alleges a claim under the Defend Trade Secrets Act.[3] Doc. 4 at 25–26. Under 18 U.S.C. § 1836, "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). A trade secret "means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes" so long as the owner of the trade secret has taken reasonable measures to keep the information secret and the information has independent economic value from not being generally known to another who can obtain economic value from the use or disclosure of that information. 18 U.S.C. § 1839(3). Richmond's sauce recipe is analogous to a business formula, and he has clearly alleged that there is value from his recipe. Doc. 4.

Misappropriation includes "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to

---

[2] Even if these claims against Kraft were not patently meritless, Richmond's claims under 17 U.S.C. § 501, 35 U.S.C. § 271, 18 U.S.C. § 241, 42 U.S.C. § 1985, 18 U.S.C. § 1343, and 18 U.S.C. § 1341 would be dismissed under this Court's narrow holding of lack of personal jurisdiction. See infra at 9–15. If personal jurisdiction were proper, these claims would fail under 12(b)(6) for the same rationale as their failure under subject matter jurisdiction. See supra at 4–9. Some courts have held that RICO imposes different personal jurisdiction requirements. See Fid. Nat'l Title Ins. Co. v. APM Mgmt. Serv.'s, LLC, No. 4:22-cv-01391-JAR, 2024 WL 1406675, at *3–4 (E.D. Mo. Apr. 2, 2024) (discussing personal jurisdiction requirements for RICO claims). Thus, even if Richmond's RICO claim against Kraft were not patently meritless, dismissal under personal jurisdiction may not be proper, but Richmond's RICO claim would be dismissed under Rule 12(b)(6) for failure to state a claim for the same rationale as its failure under subject matter jurisdiction.

[3] Richmond references the Economic Espionage Act, but this Court construes Richmond's claim as arising under the Defend Trade Secret Act, which amended the Economic Espionage Act and provides a private cause of action. 18 U.S.C. § 1836.

a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(II).  Kraft argues that "[t]he complaint is devoid of any facts showing that Kraft Heinz knew or had reason to know that the recipe was acquired by improper means."  Doc. 43 at 19.  But Richmond does allege "Defendants Nolan Weise [sic], Kraft Foods, and US Foods knowingly stole, misappropriated, and used Plaintiff's trade secret without authorization."  Doc. 4 at 25.  Accordingly, this Court cannot say at this time that Richmond's Defend Trade Secrets Act claim is patently meritless.

**B.      Personal Jurisdiction**

This Court considers whether it has personal jurisdiction over Richmond's Defend Trade Secrets Act claim.  Kraft argues that this Court lacks personal jurisdiction because "[t]he complaint fails to allege that Kraft Heinz has the necessary contacts with South Dakota to support the exercise of either general or specific personal jurisdiction."  Doc. 43 at 5.  Kraft further argues that "[i]n short, the complaint is void of any facts showing that Kraft Heinz is 'at home' in South Dakota or that Kraft Heinz purposefully directed activities toward South Dakota that have given Plaintiff's claims."  Id.

Because the Defend Trade Secrets Act does not provide for nationwide service of process, this Court applies South Dakota's long-arm statute for personal jurisdiction.  DURAG Inc. v. Kurzawski, No. 17-cv-5325 (ECT/HB), 2020 WL 2112296, at *3 (D. Minn. May 4, 2020) (applying state long-arm statute to Defend Trade Secrets Act claim); Vallone v. CJS Sols. Grp., LLC, 9 F.4th 861, 865 (8th Cir. 2021) (determining that state long-arm statute applies when federal law does not provide for nationwide service of process).  "Because South Dakota's long-arm statute confers jurisdiction to the full extent permissible under the Due Process Clause, the question becomes whether asserting personal jurisdiction over defendants comports with due

10

process." Wolf Guts v. County, No. 3:24-CV-03007-RAL, 2025 WL 1447245, at *5 (D.S.D. May 20, 2025). "Due process requires that the defendant purposefully establish minimum contacts in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend traditional conceptions of fair play and substantial justice." Id. (citation modified) (quoting K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592 (8th Cir. 2011)).

The Eighth Circuit has developed a five-factor test to evaluate whether a defendant's actions constitute sufficient minimum contacts for personal jurisdiction: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) [the state's] interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." Myers v. Casino Queen, Inc., 689 F.3d 904, 911 (8th Cir. 2012). Courts examine whether there is general and specific personal jurisdiction. Id.

### 1.    General Jurisdiction

General jurisdiction is proper generally for a corporation at its place of incorporation and principal place of business. BNSF Ry. Co. v. Tyrrell, 581 U.S. 402, 414 (2017) (citation omitted). But the Supreme Court has noted that "in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" Id. at 413 (quoting Daimler AG v. Bauman, 571 U.S. 117, 139 n.19 (2014)).

In Richmond's original response, he indicated that general jurisdiction is "completely irrelevant here" because "[t]his case is about specific personal jurisdiction." Doc. 49 at 4. Richmond in his Amended Complaint expressly states that Kraft "is a corporation organized

11

under the laws of Delaware with its principal place of business in Illinois." Doc. 4 at 11. In his amended response, he makes a general statement that Kraft "maintains a corporate office in Sioux Falls, South Dakota." Doc. 54 at 2 (citation modified). But Richmond has not shown any exceptional circumstances such that Kraft should be considered at home in South Dakota. See generally id. Accordingly, as Richmond noted, based on the allegations, general jurisdiction is not shown to be proper in South Dakota for Kraft.

### 2.    Specific Jurisdiction

Kraft argues that Richmond's "complaint fails to allege any contacts—let alone purposeful contacts—between Kraft Heinz Foods and South Dakota. There are no allegations that Kraft Heinz conducted business in South Dakota, entered contracts there, marketed or sold products there, or otherwise availed itself of the privilege of conducting activities within the state." Doc. 43 at 7–8.

Richmond disputes Kraft's argument. Doc. 49 at 5. Richmond argues that "Kraft sells its products extensively in South Dakota. It has retained a law firm in Sioux Falls, South Dakota. It has purposefully availed itself of the South Dakota market and legal system." Id. He also argues that his "claims for intellectual property theft directly arise from Kraft's presence and business activities in South Dakota. The harm occurred in South Dakota to a South Dakota resident." Id. This Court reads Richmond's filing as alleging four arguments: as to why Kraft has Specific jurisdiction in South Dakota: (1) Kraft hired local counsel, (2) Kraft sells its products in South Dakota, (3) the intellectual property theft arose from Kraft's activities in South Dakota, and (4) the harm occurred to a South Dakota resident. The Court will consider each argument in turn.

12

First, Richmond's argument that South Dakota has personal jurisdiction over Kraft merely because it retained a law firm in South Dakota to defend against his allegations is unfounded. Richmond argues that "Kraft cannot have it both ways. It cannot . . . hire lawyers in South Dakota[ ] and then claim it is a stranger to South Dakota when it is called to answer for its actions in a South Dakota court." Doc. 49 at 3. Kraft disputes this. Doc. 74 at 4. This Court finds persuasive in this context Kraft's argument. A defendant can waive personal jurisdiction by appearing and defending a case without arguing personal jurisdiction, see Carlson v. Hyundai Motor Co., 164 F.3d 1160, 1163 (8th Cir. 1999), but that is not the case here.

Richmond argues that Kraft is liable in South Dakota because it sells its products in South Dakota. Doc. 49 at 5. Although Richmond claims that his barbecue sauce is allegedly sold by Defendants nationwide, he appears to be making a more general argument that Kraft can be hailed into court in South Dakota because it generally sells products in South Dakota. Id. In a trade secret context the Eight Circuit noted that when a defendant had products sold in retailers in the state, the defendant's officers had traveled to the state to obtain the retail contract, and the defendant used machines to prepare goods either sold by retail or catalogue in the state, "[s]uch facts . . . simply mean that [defendant] functions as a manufacturer/merchant which sells goods through non-parties in the state[.] Simple commercial contacts, unrelated to [plaintiff's] trade secret claims are insufficient to establish personal jurisdiction." Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1103 (8th Cir. 1996). Accordingly, Richmond has not shown that because Kraft products are sold in South Dakota that personal jurisdiction is proper.

Richmond also argues that specific jurisdiction is proper over Kraft in South Dakota because the intellectual property theft arose from Kraft's activities in South Dakota. Doc. 49 at 5. Kraft argues that "Plaintiff alleges that Nolan Weise, a South Dakota resident, violated an

13

NDA and sold a recipe to Kraft Heinz.  This allegation reflects unilateral conduct by a third party and cannot establish purposeful availment by Kraft Heinz."  Doc. 43 at 8.  In Kraft's reply brief it argues that Richmond's

> theory is that because the alleged theft of his barbeque sauce recipe occurred in South Dakota, Kraft Heinz should have anticipated being hailed into court here. But Plaintiff does not identify any conduct by Kraft Heinz that was purposefully directed at South Dakota or that gave rise to his claims.  Instead, he relies entirely on the alleged actions of Defendant Wiese, asserting that Wiese's purported misconduct (stealing the barbeque sauce recipe) occurred in South Dakota somehow subjects Kraft Heinz to jurisdiction.

Doc. 74 at 5–6 (citation modified).

"The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person."  Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693–94 (8th Cir. 2003) (citation modified) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  Specifically in a trade secret context, the Seventh Circuit has held that "the tort of trade secret misappropriation is not intrinsically linked to interactions with a consumer," instead, "[t]he knowing acquisition, disclosure, and use of a secret are all actions that can be completed long before an offending product ever comes into contact with a consumer."  J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd., 965 F.3d 571, 577 (7th Cir. 2020).  In a Northern District of Illinois case, the court explained that, unlike in J.S.T., personal jurisdiction was met because the plaintiff "alleges that the [ ] [d]efendants reached directly into [the state] and competed with [plaintiff] for customers in this state using [plaintiff's] misappropriated trade secrets."  My Fav Elecs., Inc. v. Currie, No. 24 C 1959, 2025 WL 1768888, at *6 (N.D. Ill. June 26, 2025).

Here, Richmond alleges that US Foods distributed his products nationwide, and he specifically identifies a business in Iowa that bought barbecue sauce made from the allegedly

14

stolen recipe. Doc. 4 at 10, 16. There is no indication in the Amended Complaint that Kraft learned of the trade secret in South Dakota, Kraft manufactured the barbecue sauce using the allegedly stolen recipe in South Dakota, or Richmond lost business specifically in South Dakota because of the alleged misappropriation.[4] See generally id. Richmond also alleges that Kraft has an office in South Dakota, but he has not alleged any facts indicating that the office was involved with producing the sauce. Doc. 54 at 2.

Lastly, Richmond argues that jurisdiction is proper here because he is a resident of South Dakota who suffered harm. Doc. 49 at 5. The Eighth Circuit has noted that merely because a resident of the state has suffered a harm does not mean that the court has jurisdiction over the non-resident under due process. Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 822 (8th Cir. 2014). Although a state may have an interest in providing a forum for the residents of its state, that is a secondary factor. Myers, 689 F.3d at 911 (citing Precision Constr. Co. v. J.A. Slattery Co., Inc., 765 F.2d 114, 118 (8th Cir. 1985)). Accordingly, this factor does not outweigh Richmond's failure to sufficiently allege Kraft's minimum contacts in South Dakota.

### 3.    Conclusion on Personal Jurisdiction

This Court rules, in this instance with a pro se plaintiff who has not clearly set forth personal jurisdiction in his Amended Complaint, that this Court lacks personal jurisdiction over Kraft. This holding is narrow to the issues of this case and should not be broadly read. Accordingly, Richmond's Defend Trade Secrets Act claim against Kraft is dismissed without prejudice for lack of personal jurisdiction.

---

[4] This Court acknowledges that sometimes courts consider "conspiracy jurisdiction" and attribute acts of a co-conspirator in the forum state to other defendants because co-conspirators are agents for each other. DURAG Inc., 2020 WL 2112296, at *5–6. But because this Court found Richmond's allegations of conspiracy to be patently meritless and Richmond only argues that personal jurisdiction is established based on Kraft's conduct in the forum state, Doc. 49 at 5, Doc. 54 at 1–2, this Court does not consider personal jurisdiction based on co-conspirators' acts.

### C.   Supplemental Jurisdiction

Richmond has alleged several state law claims against Kraft.  Doc. 4.  Federal courts have original jurisdiction under diversity jurisdiction or federal question jurisdiction.  28 U.S.C. §§ 1331–1332.  Because Richmond's state-law claims do not arise under federal law, this Court does not have federal question jurisdiction over them.  28 U.S.C. § 1331.  Richmond also has not pleaded complete diversity between the parties for diversity jurisdiction.  28 U.S.C. § 1332.  Accordingly, this Court does not have original jurisdiction over Richmond's state-law claims.

Under 28 U.S.C. § 1367(a), a court has supplemental jurisdiction over state-law claims that "form part of the same case or controversy" as the claims that fall within the court's original jurisdiction.  But courts may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "In determining whether to exercise supplemental jurisdiction, courts consider judicial efficiency, convenience, and fairness to litigators."  Magee v. Trs. of the Hamline Univ., 957 F. Supp. 2d 1047, 1060 (D. Minn. 2013) (citing Condor Corp. v. City of St. Paul, 912 F.2d 215, 221 (8th Cir. 1990)).  "In assessing efficiency, convenience, and fairness, courts look to a number of factors, including 'the state of the litigation; the difficulty of the state claim; the amount of time and energy necessary for the claim's resolution; and the availability of a state forum.'"  Id. (citation omitted).  Because Richmond has not stated a claim within this Court's original jurisdiction that survived the motion to dismiss, the Court declines to exercise supplemental jurisdiction over his state-law tort claims.  See Mountain Home Flight Serv, Inc. v. Baxter County, 758 F.3d 1038, 1045 (8th Cir. 2014) (deciding that district court acted within its discretion to decline supplemental jurisdiction after dismissing § 1983 claims).

16

## IV.     Kraft's Motion to Quash (Doc. 64)

Kraft moves to quash Richmond's subpoena because it "was improperly served, constitutes impermissible and premature discovery, and does not comply with the parameters of Federal Rule of Civil Procedure 45's notice requirements." Doc. 65 at 1–2.  The District of South Dakota has previously recognized that "the Federal Rules of Civil Procedure do not countenance issuing a subpoena to a party." Cone v. Orrock, No. 5:22-CV-05087-RAL, 2025 WL 26776, at *5 (D.S.D. Jan. 3, 2025) (citing Jones v. Nat'l Am. Univ., No. 5:06-CV-5075-KES, 2008 WL 4616684, at *2 (D.S.D. Oct. 16, 2008)).  Instead, discovery of documents between parties is generally governed by Rule 34, whereas discovery of documents in the possession or control of nonparties is generally governed by Rule 45.  Jones, 2008 WL 4616684, at *2.  Accordingly, Kraft's motion to quash, Doc. 64, is granted.[5]

## V.     Conclusion

Accordingly, it is

ORDERED that Defendant Kraft Heinz's Motion to Strike, Doc. 88, is granted, and Richmond's surreply, Doc. 86, is stricken.  It is further

ORDERED the Defendant Kraft Heinz's Motion to Dismiss, Doc. 42, is granted.  It is further

---

[5] Although not argued by Kraft, this Court also notes that such discovery is not warranted because all claims against all Defendants are dismissed, Kraft is no longer a party, and the requested discovery is not necessary for this Court to rule on Kraft's motion to dismiss.

ORDERED that Defendant Kraft Heinz's Motion to Quash, Doc. 64, is granted.

DATED this 23rd day of June, 2026.

BY THE COURT:

_____
ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE

18